UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

      Plaintiff,

    v.

JUSTIN T. DAVOULT, IN
PERSONAL CAPACITY; AND
CITY OF PUNTA GORDA.

      Defendants.

_____ /

Case No. 2:25-cv-130-KCD-DNF

## **ORDER**

This case asks what happens when a citizen journalist's desire to record government officials collides with a municipality's ordinance prohibiting unconsented recording inside its own buildings. Andrew Bryant Sheets, a pro se plaintiff familiar to this Court, frequently films his interactions with local government. Here, the story begins when Sheets covertly recorded a conversation with the Punta Gorda City Manager inside City Hall. (Doc. 49 at 24.)[1] After Sheets posted the video to YouTube, Officer Justin Davoult issued him a one-year trespass warning, citing a city ordinance that forbids unconsented recording in city buildings. (Doc. 54-1.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Sheets responded with a federal lawsuit. He brings a flurry of First and Fourteenth Amendment claims against Officer Davoult and the City of Punta Gorda, alleging viewpoint discrimination, prior restraint, retaliation, and a lack of procedural due process. (Doc. 49.) Defendants now move to dismiss the complaint in its entirety. (Doc. 52.)

For the most part, the law sides with Defendants. The First Amendment protects a great deal of speech and information-gathering, but it does not grant an absolute, constitutional right to secretly film inside a government building in violation of a valid, viewpoint-neutral ordinance. Because Officer Davoult had probable cause to issue the trespass warning, he is shielded from liability. The City, too, prevails on Sheets's theories of municipal liability under the First Amendment.

But one claim survives. Sheets alleges that the City's trespass warning—which bans him from City Hall for an entire year—comes with absolutely no procedural mechanism to challenge or appeal it. At this early stage of the litigation, that is enough to state a plausible claim under the Fourteenth Amendment. Accordingly, Defendants' motion is granted in large part, but denied as to the procedural due process claim against the City.

## I. Background

Here are the relevant facts taken from the operative complaint, which must be accepted at this stage. Sheets is a self-described citizen journalist. His

2

modus operandi involves visiting government properties, recording his interactions with public officials, and posting the resulting footage to his YouTube channel to promote government accountability.

On February 18, 2021, Sheets visited the Punta Gorda City Hall Annex to speak with City Manager Greg Murray. He also stopped by the City Clerk's Office to request certain public records. Unbeknownst to the city employees he spoke with, Sheets was recording them. To capture the encounters covertly, he placed his smartphone in his shirt pocket with the camera facing out. It is undisputed that Sheets did not ask for, or receive, the employees' consent to record them. (*See* Doc. 49 at 8-9, 15.)

A few days later, Sheets uploaded the footage to the internet. Officer Davoult eventually watched the videos. He recognized that Sheets had recorded city staff inside city buildings without permission. (*Id.* at 25.) In Punta Gorda, that is a problem. City Ordinance 15-48 strictly regulates recording inside city facilities. Specifically, the ordinance prohibits video recording "anywhere inside of City buildings" without the City Manager's approval. Punta Gorda, Fla., Code of Ordinances ch. 15, § 15-48(e), (h)(15). It also forbids recording "without the consent of all persons whose voice or image is being recorded." *Id.*

Believing Sheets had violated the ordinance, Officer Davoult tracked him down and issued a trespass warning. (Doc. 54-1.) The consequences were

3

severe: they barred Sheets from returning to City Hall or its annex for a full year under threat of arrest. (*Id.* at 4-5.)[2]

From these events, this lawsuit was born. Sheets insists he was in a "public meeting" with the City Manager, which he argues exempts him from the ordinance. (*See* Doc. 54 at 3.) He also contends that the ordinance is only triggered if he was explicitly asked to stop recording and refused—a step he says the City skipped because his camera was hidden. (*Id.* at 3.) Because of this, Sheets claims he was actually targeted by Officer Davoult for his anti-police viewpoint, rather than for a genuine ordinance violation. (Doc. 49 at 4.)

Finally, and crucially for the one claim that survives today, Sheets alleges that the trespass warning he received is a constitutional dead end. He says the City provides absolutely no procedural mechanism—neither before the warning is issued nor after—for a recipient to appeal or challenge a year-long ban from a public building. (*Id.* at 33-34.)

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to

---

[2] For ease of reference, the Court cites the page numbers generated by its electronic filing system for all exhibits and attachments.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Discussion

Sheets directs his allegations at two distinct defendants: Officer Davoult and the City of Punta Gorda. Because the legal standards for individual and municipal liability differ, it makes sense to address them separately. The Court will begin with the claims against Officer Davoult before turning to the City.

#### A. Officer Davoult

Sheets alleges that Officer Davoult violated his First Amendment rights by retaliating against him for his "citizen journalism" and discriminating against his "anti-police" viewpoint (Claims 1 and 5). He also throws in a procedural due process claim against the officer (Claim 2).

Start with the First Amendment. It generally prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). But the Supreme Court has made clear that if a police officer has probable cause to believe a plaintiff committed a legal violation, a retaliatory arrest or trespass generally fails as a matter of law. *Id.* at 401-02; *see also Berry v. Smith*, No. 2:25-CV-299-JES-NPM, 2025 WL 3906027, at *5 (M.D. Fla. Dec. 3, 2025). Absent a narrow exception (that is not argued or present here), the existence of probable cause precludes a companion First Amendment claim. *See Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024).[3]

The problem for Sheets is that he admits he broke the rules. Punta Gorda Ordinance 15-48 prohibits unconsented video recording inside City buildings. By his own admission, Sheets walked into City Hall with a camera peeking out of his shirt pocket and covertly recorded the staff without their knowledge or consent. That recording was then uploaded and viewed by Officer Davoult.

---

[3] The Supreme Court left open a narrow escape hatch in *Nieves*. Even if an officer has probable cause, a First Amendment claim can survive if the plaintiff shows that officers typically look the other way for this specific offense—think of the vocal government critic who gets arrested for jaywalking. *Nieves*, 587 at 406-08. But to use that escape hatch, a plaintiff must present objective evidence of disparate treatment. *Id.* at 407. Sheets has not even attempted to thread that needle. He makes no argument that Punta Gorda police routinely allow other citizens to covertly record staff inside City Hall without consent. Because he has not pled the objective evidence required to trigger the *Nieves* exception, that door remains firmly closed. *See, e.g.*, *Brown v. Gonzalez*, No. 2:24-CV-125, 2025 WL 1787152, at *10 (S.D. Ga. June 27, 2025).

With the undisputed facts establishing that Sheets violated the ordinance, Supreme Court precedent dictates the rest: his First Amendment claims are left by the curb. *See Redd v. City of Enter.*, 140 F.3d 1378, 1383 (11th Cir. 1998) ("When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested.").

Sheets tries to bypass the ordinance by arguing his drop-in visit with the City Manager was a "public meeting," which the ordinance exempts. (Doc. 54 at 3.) But a spontaneous, one-on-one conversation with a municipal employee in a waiting area does not magically transform into a noticed public meeting under Florida law simply because a citizen is asking questions. And even if we indulged that theory, it would not save his claims. Sheets also covertly recorded staff in the City Clerk's office while requesting records. By no stretch of the legal imagination is a routine public records request a public meeting. That interaction alone provided Officer Davoult with an independent, valid basis to issue the trespass warning.

Sheets also argues that the ordinance only kicks in if he is asked to stop recording and refuses. He reasons that by keeping his camera concealed, he prevented anyone from asking him to stop, meaning there was no refusal and no violation. (Doc. 54 at 3-4.) That is a creative loophole, but it ignores the plain text. The ordinance unequivocally declares that recording inside city buildings

without consent is "unlawful and a violation." Punta Gorda, Fla., Code of Ordinances ch. 15, § 15-48(e). The refusal to stop recording merely elevates that baseline violation into an immediate, removable disruption. *Id.* Sheets cannot use the success of his own stealth as a shield. A secret violation is still a violation. And the moment Officer Davoult watched the unauthorized footage on YouTube, he possessed the objective evidence—and thus the probable cause—necessary to issue the trespass citation.

As for the procedural due process claim, Sheets alleges his due process rights were violated because Officer Davoult never ordered him to turn off the camera before issuing the trespass. (Doc. 49 at 26.) This theory fails for the same reason as above: the ordinance does not require a warning to establish a violation. Because the ordinance demands no such prerequisite, Officer Davoult had no corresponding constitutional obligation to ask Sheets to stop recording before issuing a ticket. But Sheets's argument also reveals a fundamental misunderstanding of procedural due process. The Fourteenth Amendment requires a fair process—typically notice and an opportunity to be heard—when the state deprives someone of a liberty or property interest. *See Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). It is an inquiry into the legal machinery and appellate mechanisms provided by the government. Individual officers enforcing a trespass policy do not design the procedural mechanisms for appealing those warnings. If there is a constitutional defect in

the process, it lies with the municipality, not the patrolman handing out the paper. *See, e.g.*, *Grooman v. Clackamas Cnty.*, No. 3:13-CV-00519-HA, 2014 WL 6460840, at \*7 (D. Or. Nov. 13, 2014); *Bumps v. Trasavage*, No. 1:18-CV-11839-IT, 2020 WL 1083425, at \*6 (D. Mass. Mar. 6, 2020).

## B. The City of Punta Gorda

That leaves the claims against the City. A municipality cannot be held liable under 42 U.S.C. § 1983 just because it employs someone who committed a constitutional violation. There is no *respondeat superior* liability for civil rights violations. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, Sheets must show that a municipal policy or custom caused his injury. *Id.* He attempts to do so across several distinct counts, raising theories of facial unconstitutionality, failure to train, and prior restraint, alongside his procedural due process claim. These theories are addressed in turn.

### i. Facial Challenge to Ordinance 15-48 (Claim 3)

Sheets maintains that Ordinance 15-48 is facially unconstitutional. (Doc. 49 at 27.) A facial challenge is a distinct legal animal. Unlike an as-applied challenge, which argues that a law was unconstitutionally enforced against a specific individual in a specific instance, a facial challenge attacks the law itself. It asserts that the statute is so fundamentally flawed—whether because it is overbroad, vague, or content-based—that it cannot validly exist. *See*

9

*Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). The remedy for a successful facial challenge is not just compensation for the plaintiff, but the total invalidation of the statute, effectively wiping it from the books. *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000).

We need not spend long here. The Eleventh Circuit recently answered this very issue, evaluating the exact ordinance. *See Hoffman v. Delgado*, No. 23-13213, 2025 WL 25856, at *3 (11th Cir. Jan. 3, 2025). In *Hoffman*, the court squarely held that Ordinance 15-48 is a reasonable, viewpoint-neutral restriction on recording inside city-owned buildings. *Id.* Sheets offers nothing to contradict that holding. Indeed, beyond merely claiming that the ordinance is "unreasonable," the complaint contains no cogent theory as to how Ordinance 15-48 offends the Constitution. (*See* Doc. 49 at 27-29.) To keep a facial challenge alive, a plaintiff must do more than express his personal disagreement with a law; he must show it is unconstitutional in nearly all its applications. *Seei United States v. Hansen*, 599 U.S. 762, 770 (2023). A naked assertion of unreasonableness does not even begin to clear that high bar— especially when the Eleventh Circuit has just finished saying the opposite. The facial challenge thus fails.

### ii. Failure to Train (Claim 4)

Sheets next attempts to construct a *Monell* claim by arguing the City failed to train its officers on how to properly enforce Ordinance 15-48. (Doc. 49

at 29.) A failure-to-train theory is the most tenuous form of municipal liability. It requires a showing of "deliberate indifference," which ordinarily means demonstrating a widespread, persistent pattern of similar constitutional violations by untrained employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

This claim fails right out of the gate. A municipality cannot be liable under *Monell* if there is no underlying constitutional violation. Because we have already determined that Officer Davoult lawfully enforced a valid ordinance—meaning no First Amendment violation occurred—the City is categorically off the hook. You cannot sue a city for failing to train its officers not to violate the Constitution when no constitutional violation actually took place during the incident in question. *See Cannon v. City of Port St. Lucie*, No. 24-CV-14235, 2025 WL 2606674, at *5 (S.D. Fla. June 24, 2025) ("[A] municipality cannot be held liable under § 1983 without an underlying constitutional violation.").

But even if we pretended a constitutional violation took place, Sheets still comes up empty. To prove deliberate indifference, a plaintiff must point to a pattern of similar constitutional violations by untrained employees, putting the municipality on notice that its training is dangerously deficient. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Sheets tries to meet this heavy burden by pointing to his own isolated encounters and a handful of curated YouTube clips

11

of people arguing with police. That is not enough. For one thing, Sheets offers no evidence that the events in these videos share any factual similarity to his own conduct. But the larger problem is that an argument with an officer is not automatically a civil rights violation. Sheets has failed to show that any of these curated clips actually resulted in unconstitutional conduct. You cannot build a widespread municipal custom out of unsubstantiated internet videos. *See Poulin v. Bush*, 650 F. Supp. 3d 1280, 1304 (M.D. Fla. 2023) ("Where a Plaintiff relies on a pattern of complaints of unconstitutional conduct to show a custom, the complaints must have merit. The complaints must also concern factual situations that are substantially similar to the case at hand.").

### iii.     Prior Restraint (Claim 7)

Sheets next alleges that the trespass warning he received acts as an unconstitutional "prior restraint" on his free speech rights. (Doc. 49 at 35-36.) Specifically, he argues that the one-year ban effectively locked him out of City Hall, preventing him from attending and speaking at future City Council meetings. (*Id.*)

"A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs." *Frandsen*, 212 F.3d at 1236-37. "Permitting ordinances and licensing ordinances are classic examples of prior restraints." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1223 (11th Cir. 2017).

12

"The doctrine of prior restraint originated in the common law of England, where prior restraints of the press were not permitted, but punishment after publication was." *Alexander v. United States*, 509 U.S. 544, 553 (1993). And while the Supreme Court has more broadly defined "prior restraint" since then, the Court has also "steadfastly preserved the distinction between prior restraints and subsequent punishments." *Id.* at 553-54. Indeed, a prohibition on conduct "that may incidentally affect expression" is not subject to prior restraint analysis when it is issued because of "prior unlawful conduct." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 n.2 (1994).

That critical distinction resolves the claim here. The City did not preemptively deny Sheets access to a forum to silence his future speech. It handed him a penalty for an offense he had already committed—*i.e.*, violating Ordinance 15-48. Because the trespass warning flows directly from his prior unlawful conduct, the fact that it incidentally barred him from future public meetings does not turn it into a prior restraint. It is a textbook subsequent punishment, which "alone places the trespass warnings in the category of subsequent punishments and differentiates them from prior restraints." *Wirtshafter v. Trs. of Indiana Univ.*, No. 1:24-CV-00754-RLY-MKK, 2026 WL 60336, at *13 (S.D. Ind. Jan. 8, 2026); *see also Coley-Pearson v. Martin*, 689 F. Supp. 3d 1339, 1370 (S.D. Ga. 2023).

### iv.        Procedural Due Process (Claim 6)

Finally, we arrive at the surviving claim. Here, Sheets asserts that the City's trespass warning violates the procedural guarantees of the Fourteenth Amendment. (Doc. 49 at 33.) The Court agrees.

"There can be no doubt that, at a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "[I]t is equally clear that the government must provide the requisite notice and opportunity for a hearing at a meaningful time and in a meaningful manner[.]" *Id.* "If the government fails to comply with the dictates of the Due Process Clause, the aggrieved party can seek compensatory damages and equitable relief under 42 U.S.C. § 1983." *Id.* (citing *McKinney v. Pate*, 20 F.3d 1550, 1555, 1557 (11th Cir. 1994)).

A procedural due process claim, like brought here, thus has three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden*, 345 F.3d at 1232.

The City first maintains that Sheets has no protected liberty interest that would trigger due process. It points out, correctly, that the public has no absolute constitutional right to visit City Hall "under all conditions and at all times." (Doc. 52 at 20 (citing *Catron v. City of St. Petersburg*, 658 F.3d 1260,

14

1267 n.5 (11th Cir. 2011).) But this argument sets up a straw man. Sheets is not demanding unlimited access to the City Manager's office; he is challenging a blanket, year-long ban from a public building. And on that front, the City reads its own case law upside down. The Eleventh Circuit in *Catron* squarely held that citizens *do* possess a constitutionally protected liberty interest in accessing public spaces, meaning the government cannot banish them without due process. 658 F.3d at 1266. The City conflates its justification for removing Sheets with its obligation to provide a meaningful way to challenge his long-term exile.

The City next pivots to a pleading technicality, arguing that Sheets offers only "conclusory allegations" and fails to provide specific facts to support his claim. (Doc. 52 at 21.) But how exactly does a plaintiff plead the factual existence of nothing? Sheets is not just throwing around legal buzzwords. He is alleging a concrete, factual negative: that the City imposed a one-year ban from a public building and provided no hearing, no appeal form, and no designated official to review it. That is a statement of fact, not a conclusion of law. The City cannot demand that a plaintiff plead affirmative details about a procedure that he claims does not exist.

The City takes one last swing, arguing that because Sheets admits to violating the ordinance, the trespass warning was justified and his claim must fail. (Doc. 52 at 21.) But this argument is entirely misplaced. The procedural

15

guarantees of the Fourteenth Amendment do not vanish the moment someone breaks the rules. The question under the Due Process Clause is not whether the City was substantively correct to issue the penalty; it is whether the City provided an adequate process to challenge it. *See, e.g.*, *Sheets v. City of Punta Gorda*, No. 2:24-CV-495-KCD-DNF, 2026 WL 151841, at *3 (M.D. Fla. Jan. 21, 2026) ("To say that the validity of the trespass excuses the lack of process would leave the Due Process Clause a nullity.").

Stepping back from the City's defenses, Sheets has successfully checked all three boxes required to plead a procedural due process claim. First, he alleges the deprivation of a constitutionally protected liberty interest: a one-year banishment from a public building. *See Catron*, 658 F.3d at 1266 ("Plaintiffs have a constitutionally protected liberty interest to be [on] city lands of their choosing that are open to the public generally."). Second, he alleges state action: an on-duty Punta Gorda police officer issued the ban under the color of municipal authority. *See Sheets*, 2026 WL 151841, at *5. Third, and most crucially, he alleges constitutionally inadequate process: he claims the City handed down this year-long exile without offering a hearing, an appeal form, or any administrative avenue to challenge it. "By providing no procedural means . . . to challenge the [trespass] warning, the City has removed the safety net the Constitution requires." *Id.* at 6.

16

The City may ultimately prove that it has procedures robust enough to satisfy the Fourteenth Amendment. But it certainly has not presented them to the Court today. Nowhere in its motion does the City point to any hearing process or appeal track available to citizens issued a trespass citation. Instead, it argues only that Sheets is not entitled to any process in the first place. Because the law says otherwise, we must take Sheets's core allegation as true: that the City operates a procedural void. That is sufficient to state a claim at this stage. *See Catron*, 658 F.3d at 1269.

## IV. Conclusion

Stripping this case down to its studs reveals a sharp divide between substance and procedure. Substantively, Sheets broke the rules. His own admissions and Eleventh Circuit precedent doom his various First Amendment theories. But procedurally, the story is different. The City's undisputed power to remove a rule-breaker in the moment does not excuse its constitutional obligation to provide a meaningful avenue to appeal a year-long exile from public property. The case will thus proceed to discovery to test whether the City's trespass policy operates as the procedural black hole Sheets claims it is.

One final issue. When a pro se complaint falls short, courts typically afford the plaintiff an opportunity to amend. But that leniency is not infinite. *Collar v. Rivera*, 823 F. App'x 710, 711 (11th Cir. 2020). Sheets has already been given ample opportunity to refine his case, having amended the complaint

twice before. He has not asked for a third, and the Court will not grant one unprompted. *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020). Between his prior opportunities and his silence now, the Court declines to prolong the pleading stage. Accordingly, Defendants' Motion to Dismiss (Doc. 52) is **GRANTED IN PART AND DENIED IN PART**. Claims 1, 2, 3, 4, 5, and 7 are dismissed **with prejudice**. The case moves forward solely on Claim 6. The Clerk is **DIRECTED** to terminate Officer Davoult as a defendant, and the City must answer Claim 6 within fourteen days.

ORDERED in Fort Myers, Florida on April 21, 2026.

Kyle C. Dudek
United States District Judge